IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| ROBERT SAWYER,        )<br>          Petitioner,   )<br>                              )<br>v.                             )<br>                              )<br>UNITED STATES OF AMERICA,  )<br>          Respondent.  ) | Criminal Action No. 3:07CR175<br>Civil Action No. 3:08CV00597 |

**MEMORANDUM OPINION**

Robert Sawyer ("Sawyer" or "petitioner") filed a petition pursuant to Title 28, United States Code, Section 2255, attacking his conviction and sentence. In the petition, Sawyer makes two arguments: (1) an allegation that the government lacked jurisdiction to prosecute him for the offense to which he pled guilty and (2) an allegation of ineffective assistance of counsel with regard to his retained counsel. The government filed a response asking that Sawyer's petition be denied, Sawyer filed a reply to the government's response, and this matter is ripe.[1] Thereafter, the petitioner also filed a motion for summary judgment and a motion for default judgment.

Factual Background and Procedural History

According to the statement of facts signed by the parties and counsel and filed in this matter, the facts with regard to the underlying offense were as follows: On October 29, 2006, within the Eastern District of Virginia, at approximately 10:45 p.m., in furtherance of the conspiracy to damage and destroy, by means of fire and explosive materials, property used in and affecting interstate commerce, Sawyer and others placed an explosive device inside a

---

[1] The Court finds that the record as made conclusively shows that petitioner is not entitled to relief under Section 2255. Petitioner is therefore not entitled to a hearing on the motion. See Hodges v. United States, 368 U.S. 139 (1961).

portable toilet owned by S.B. Cox, Inc., and which was used in and affected interstate commerce.[2] Members of the Henrico County Fire Department were dispatched to that construction site where the port-a-john had been set on fire.

Upon arriving at the scene, the fire department extinguished the fire and recovered an orange aluminum cylinder wrapped with duct tape from inside the port-a-john. The cylinder had been filled with black gun powder and metal ball bearings. The top of the cylinder had been sealed with duct tape, and a hole had been drilled into the side of the container. In addition, a fuse had been made which was fastened to the cylinder. Based upon the fire investigators' training and experience, they concluded that the device was an improvised explosive device (IED).

The cylinder that was used to make the IED bore the name "Ozark Trail." This brand is distributed exclusively by Wal-Mart. Investigators met with individuals at the Brook Road Wal-Mart in Henrico County, Virginia, and found that a cash purchase had been made on the evening of October 29, 2006, for an Ozark Trail aluminum container and slingshot ammunition that was consistent with the metal ball bearings that had been placed inside the IED. In addition, investigators found that a credit card purchase had been made for black gun powder at the same time that the cylinder and the ball bearings had been purchased.

After reviewing Wal-Mart's surveillance video, agents observed Sawyer and the other defendants arrive at the Wal-Mart on Brook Road in Henrico County, Virginia in a white pickup truck. Sawyer and the defendants then entered the store. Agents identified Jonathan West,

---

[2] Despite the fact that the Statement of Facts includes this statement – that Sawyer and others placed an explosive device inside a portable toilet owned by S.B. Cox, Inc., and *which was used in and affected interstate commerce* – Sawyer now challenges this conclusion.

Joshua Taylor Jones and Tracy Sawyer[3] as the individuals who had purchased the gun powder, the aluminum cylinder, and the ball bearings. In addition, Joshua Hernandez was observed removing the Ozark Trail cylinder from the shelf. After making the purchases, the defendants were observed getting back into the white pickup truck and leaving the Wal-Mart parking lot.

Upon further investigation, it was learned that after the five defendants left Wal-Mart, they returned to West's home. In the basement of West's home, Robert Sawyer, West, Jones, Tracy Sawyer, and Hernandez worked together to drill a hole in the cylinder, fill it halfway with black gun powder, place approximately 75 ball bearings into the container, and seal the lid of the cylinder with duct tape. All five individuals then participated in creating a fuse of approximately four to five feet in length, which they fashioned out of duct tape filled with gun powder. Once the five defendants finished making the IED, they left West's home and drove to the 9800 block of JEB Stuart Parkway in Glen Allen, Virginia.

Upon arriving at that location, West exited the truck, placed the IED inside the port-a-john, lit the fuse with a cigarette lighter, and returned to the truck. The defendants then drove approximately 50 feet away from the device, and watched as the fuse burned up to the door, and then began burning the door itself. A citizen saw the fire and attempted to extinguish it by throwing sand and dirt on the flames. The defendants told the citizen to get away from the fire and that it was going to explode. A second citizen saw the fire and notified the Henrico Fire Department. Shortly thereafter, firefighters arrived on the scene and extinguished the fire. The IED that the defendants had created in West's basement was recovered from inside the port-a-

---

[3] Defendant Tracy Sawyer is the paternal half-brother of petitioner Robert Sawyer. The five defendants were social friends.

john. Robert Sawyer and the other defendants stipulated and agreed that, had the device exploded, a citizen or firefighter could have sustained serious bodily injury from the shrapnel that had been placed inside the device.[4]

On May 1, 2007, the government filed a criminal information against each of the five defendants charging each with Conspiracy to Destroy Property Used in Interstate and Foreign Commerce With Fire and Explosives, in violation of Title 18, United States Code, Section 371, noting the underlying criminal offense pursuant to Title 18, United States Code, Section 844(i).[5] On May 10, superseding criminal informations were filed against defendants West and Jones, and each of those defendants pled guilty on May 11, 2007. On May 11, a superseding criminal information was filed against defendant Hernandez, and he pled guilty on May 14, 2007. On May 14, a superseding criminal information was filed against defendant Tracy Sawyer, and he pled guilty on May 30, 2007. On June 6, a superseding criminal information was filed against defendant Robert Sawyer, petitioner herein. On June 14, Charles Gavin, Sawyer's first retained counsel, filed a motion to withdraw as counsel. The motion was granted that same day, and the Court substituted David Morgan as counsel for Robert Sawyer. Petitioner then pled guilty on June 14 to the superseding criminal information. The signed plea agreements and signed statements of facts in each of the five cases were essentially identical. Sawyer's plea agreement

---

[4]In his petition, Sawyer adds that he and the other defendants purchased water, returned to the scene, and attempted to extinguish the fire until the firefighters arrived at which time the defendants "became scared and fled the scene."

[5] The defendants were indicted in separate cases, and the applicable case numbers for the other four defendants are as follows: U.S. v. Joshua Taylor Jones, 3:08CR170; U.S. v. Tracy Sawyer, 3:08CR172; U.S. v. Joshua Hernandez, 3:08CR173; and U.S. v. Jonathan West, 3:08CR174.

stated that he was "satisfied that [his] attorney has rendered effective assistance." See Plea Agreement, ¶ 3. Defendants Jones, West and Hernandez were sentenced on August 14, 2007. Defendants Tracy Sawyer and Robert Sawyer were sentenced on September 12, 2007. Robert Sawyer was sentenced to a term of imprisonment of twenty-four months and was ordered to pay restitution in the amount of $1,327.26 to S.B. Cox, Inc. and $321.13 to the Henrico Fire Department. Each of the other defendants was also sentenced to twenty-four months of imprisonment and each was ordered to pay restitution in the same amounts to the same victims.

On September 11, 2008, petitioner Robert Sawyer timely filed the instant petition.

Section 2255 Claims and Analysis

In Sawyer's Section 2255 petition, he makes the following claims:

1. That his retained attorneys were ineffective for advising him to plead guilty without having conducted any investigation into a defense; and

2. That the government lacked jurisdiction due to an insufficient nexus between the facts of the case and the interstate commerce clause.

The claims are related because Sawyer is essentially claiming that his attorneys were ineffective because they did not properly investigate a "jurisdictional" defense and had they done so, they would have determined that the government lacked jurisdiction to prosecute the case. Sawyer also states that he "is not collaterally attacking his plea agreement, but rather is challenging the constitutionality of the conviction itself." However, this does not seem to be the case since he argues that he was "inappropriately" advised by both retained defense attorneys, Charles Gavin and David Morgan, that he should accept the plea offer extended by the government.

In order to gain relief under 28 U.S.C. § 2255, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). A federal district court is authorized to grant relief only if it determines that the challenged sentence resulted from a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424 (1962).

The standard applicable to claims of ineffective assistance of counsel is that required by Strickland v. Washington, 466 U.S. 668 (1984), and Hill v. Lockhart, 474 U.S. 52 (1985). In Strickland, the Supreme Court established a two-prong test for determining whether the assistance of counsel was so deficient as to require reversal of a conviction. First, petitioner must establish that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 687-88. Second, he must establish that the deficient performance of counsel prejudiced the defense to the extent that he was deprived of a fair trial. He must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. Sawyer bears the burden of showing prejudice. Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) ("This is no insubstantial burden . . . ."). When a defendant claims that he has been denied effective assistance of counsel in his decision to plead guilty, the Strickland test is modified slightly. Petitioner must still establish that the advice rendered fell below an objective standard of reasonableness. He must also show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In his Section 2255 petition, Sawyer claims that his initial defense counsel, Charles Gavin, advised him "to go in and provide all the information he had regarding the offense conduct to the government without any proffer from the government, thereby exposing him to a statutory maximum penalty of twenty (20) years." He claims that, "as a result, [he] spoke with other attorneys, and when he spoke with [] David Paul Morgan, Morgan informed [him] that he had a very good case, and that he believed he could win the case because of the way he was charged." Sawyer also claims that, once he retained Morgan, Morgan then told him that he should take the plea offer from the government without telling Sawyer why he should take the offer and that Morgan did not "otherwise inform him of any strategic choices that he had made after any investigation of law and facts relating to any possible defense as he had earlier claimed prior to being retained." He also claims that had counsel conducted an investigation as to a defense, "he could have easily determined that Federal authorities lacked jurisdiction to prosecute the case." Sawyer also states that since his incarceration, he has learned that the port-a-johns "rented by S.B. Cox, Inc. are only rented within a thirty-five (35) mile radius of Richmond, Virginia" and that they do "not rent any of their port-a-johns outside the State of Virginia." Sawyer concludes with his contention that the government did not have jurisdiction to prosecute him in this matter.

Title 18, United States Code, Section 844(i), the predicate offense for the conspiracy with which Sawyer was charged and to which he pled guilty, states in pertinent part that, "[w]hoever maliciously damages or destroys . . . by means of fire or an explosive, any. . . real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign

commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both[.]"

The port-a-john in this case was ordered from Satellite Industries, Inc. in Plymouth, Minnesota. It was manufactured outside of the Commonwealth of Virginia and traveled in interstate commerce from Plymouth, Minnesota, to Chester, Virginia. The government's Exhibit 1 shows that during the discovery process, defense counsel Charles Gavin was provided with information showing that the port-a-john traveled in interstate commerce. Further, as Gavin states in his Affidavit, "[p]rior to Mr. Sawyer providing a statement, [Gavin] explored all of the facts necessary to make an appropriate recommendation." Government's Exhibit No. 2, p.2, ¶ 2. Gavin also states that he "conducted legal research regarding the various issues presented by the facts, including, but not limited to, federal nexus." Id. He also states that he and Ed Riley, counsel for one of the other defendants, Hernandez, specifically discussed the nexus and the basis for federal jurisdiction. Id. Both Gavin and Riley "contacted S.B. Cox, Inc." and "were able to ascertain that, although S.B. Cox conducted business operations almost entirely in Virginia, that they did have some limited operations in North Carolina." Id. The affidavit continues: "[w]e also discovered that the port-a-johns which were in question, although owned by S.B. Cox, were manufactured outside of the State of Virginia." Id. "Accordingly, and in light of case law regarding the minimal extent of contact necessary to establish federal jurisdiction, " Gavin concludes in the affidavit, "it was my opinion that jurisdiction could be established." Id. at p.2-3. He also states: "Mr. Sawyer agreed with my advice and agreed to provide the statement" but that later, "[a]fter Sawyer's statement was provided, but prior to his plea, Mr. Sawyer decided to discharge my services." Id. at p. 3.

Accordingly, Gavin states that it was his opinion that the jurisdictional defense that he had investigated and researched would not prevail. Moreover, Gavin believed that it was in Sawyer's best interest to cooperate with the government, given his exposure to various counts, along with the opportunity to cooperate and possibly be recommended for a sentence reduction. Otherwise, Sawyer would have been exposed to a potential mandatory minimum sentence of five years of imprisonment and a maximum term of imprisonment of twenty years.

With regard to the petitioner's representation by David Paul Morgan, Morgan states: "Mr. Sawyer is incorrect in suggesting that he was never advised of the potential defenses. He received a letter from me that was mailed on June 5, 2007 highlighting those issues." See Government's Exhibit 3, ¶ 4. Morgan also explains in his affidavit that he discussed with the petitioner that "there was a potential argument with respect to subject matter jurisdiction of the Court." Id. at ¶ 3. The affidavit explains in detail the discussion between client and attorney. Morgan also states: "[p]rior to Mr. Sawyer's signing the plea agreement on May 31 and then again on June 5, 2007 and the day before his sentencing he and I discussed several issues with regard to potential defenses he may have had including abandonment of the conspiracy and the jurisdiction of the court." Id. at ¶ 2. Despite Morgan's research and this discussion, Morgan felt that due to "the fact that the outhouse was actually rented, and that the company that rented the outhouse did business outside of the Commonwealth [of Virginia,] the chances of winning on that motion was nearly zero." Id. at ¶ 3. Morgan also states that he told Sawyer about the "downside risks of challenging the Court's jurisdiction and losing and then having to go before the Court without any kind for plea agreement whatsoever." Id. Morgan states that Sawyer "then chose to sign the plea agreement." Id.

9

Despite petitioner's claims to the contrary, the Court finds the defense attorneys' affidavits to be credible. The Court also finds that petitioner's two defense attorneys advised him appropriately as to the possible defenses he could raise, and the advantages of pleading guilty, cooperating with the government, possibly being recommended for a sentence reduction and, perhaps most significant, avoiding exposure to a possible mandatory minimum sentence of five years of imprisonment and a maximum term of imprisonment of twenty years. Despite Sawyer's arguments and exhibits, Sawyer fails to establish any evidence that his attorneys' performance fell below professional norms.[6] Therefore, his claim of ineffective assistance of counsel is without merit and will be denied.

Petitioner's other claim is essentially that the United States lacked jurisdiction to prosecute him in this case under Title 18, United States Code, Section 844(i), the predicate offense for the conspiracy with which Sawyer was charged and to which he pled guilty. He states that since his incarceration, he "has learned that the port-a-johns rented by S.B. Cox, Inc. are only rented within a thirty-five (35) mile radius of Richmond, Virginia" and that "S.B. Cox, Inc. does not rent any of their port-a-johns outside the State of Virginia." On this basis, Sawyer argues that the jurisdictional element requires that the property in question must be "used in interstate or foreign commerce" and that the jurisdictional element was not met in this case.

Title 18, United States Code, Section 844(i) states that the property must have been "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." The petitioner cites Jones v. United States, 529 U.S. 848, 855 (2000), and other cases to support

---

[6] Given the Court's determination that the petitioner has not established that counsel's performance fell below prevailing professional norms, the Court need not reach the second prong.

his argument that the port-a-john must have been "'used' in an activity affecting commerce," . . . most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." He argues that the port-a-john in this case does not meet that statutory requirement. He also argues, in his reply brief, that the credit application used by S.B. Cox, Inc. includes a choice of law provision requiring that the laws of the Commonwealth of Virginia apply to any dispute with regard to the rental agreement, and that such a provision supports his position. The government's position is that the port-a-john in this case affected interstate commerce as it was manufactured outside of the Commonwealth of Virginia and, in fact, traveled in interstate commerce from Plymouth, Minnesota, to Chester, Virginia after it was ordered by S.B. Cox, Inc. from Satellite Industries, Inc. in Plymouth, Minnesota. The Court agrees that the fact that the port-a-john was manufactured outside of the Commonwealth of Virginia and traveled in interstate commerce after it was ordered by S.B. Cox, Inc. satisfies this element of the offense.

Further, the defendant admitted this element as part of a valid guilty plea. As noted previously, the statement of facts includes a stipulation by the parties that "that Sawyer and others placed an explosive device inside a portable toilet owned by S.B. Cox, Inc., *and which was used in and affected interstate commerce.*" (emphasis added). "A guilty plea admits the interstate commerce element of a criminal charge." U.S. v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001) (citation omitted). "Our review of the holdings of other circuits confirms that a defendant who tenders an unconditional guilty plea to a section 844(i) indictment waives his right to appeal the district court's decision that the interstate commerce element of the statute has been

satisfied." Id. at 1166-67. For these reasons, the petitioner's second claim is also without merit and will be denied.

Petitioner also filed a motion for summary judgment on February 3, 2009 and a motion for default judgment on March 5, 2009. In the motion for summary judgment, petitioner claims that the government or the Court was intentionally delaying this matter. The Court did not order the government to respond to the motion for summary judgment, given that the matter was fully briefed prior to the petitioner submitting these motions.[7] In the motion for default judgment, petitioner argues that the Court should grant his motion for summary judgment because the government did not respond. These motions are without merit and will be denied.

For all these reasons, the defendant's Section 2255 petition will be denied.

An appropriate order shall issue.

April 8, 2009  /s/
DATE  RICHARD L. WILLIAMS
  SENIOR UNITED STATES DISTRICT JUDGE

---

[7] In habeas proceedings, the Court reviews all pleadings and determines whether to order the government to respond, pursuant to the Rules Governing Section 2255 Proceedings, Rule 4(b). Further, pursuant to Rule 5(a), "The respondent is not required to answer the motion unless a judge so orders."